RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6 / 7 / 13
JDB

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

---

| | |
|---|---|
| **HOLLINGSWORTH** | **CIVIL ACTION NO. 10-815** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **WINN PARISH SHERIFF'S OFFICE, ET AL.** | **MAGISTRATE JUDGE KIRK** |

---

**MEMORANDUM RULING**

Before the court are various motions filed by the parties in the above-captioned case. For the reasons expressed below, the court finds that plaintiff's appeal of the magistrate judge's decision denying plaintiff leave of court to amend his complaint should be GRANTED[1] and, accordingly, plaintiff's proposed amended complaint[2] should be filed into the record as his second amending and supplemental complaint. The court further finds that defendant's motion for summary judgment should be GRANTED as to plaintiff's race-based pay discrimination claim and intentional infliction of emotional distress claim and such claims should be dismissed with prejudice. The court also finds that the motion in limine filed by defendant should be DENIED in all respects.[3]

## I. Relevant Facts

Plaintiff Author Hollingsworth is a former Winn Parish Sheriff's Officer, who now brings suit against defendant A.D. Little (hereinafter "Sheriff Little") the former Winn Parish Sheriff. Plaintiff was promoted from field deputy to bailiff for Louisiana's Eighth Judicial

[1] R. 55.
[2] R. 49-3.
[3] R. 38, 39.

District Judge Jim Wiley in 2000, but was removed from his position as bailiff in 2008 when Sheriff Little assumed office after his election.[4]

Plaintiff continued his employment with the Winn Parish Sheriff's Office and, in March of 2009, asserts that he became aware that "the full-time Caucasian deputies had received pay increases while the African American deputies had not."[5] Plaintiff filed an EEOC charge of discrimination on August 27, 2009 and alleges that he was "interrogated" by Sheriff Little and two other deputies about this charge on September 17, 2009.[6] Plaintiff was issued an "Employee Warning Notice" on the same day, which describes the infraction as being the filing of the EEOC and meeting with an attorney in Monroe, Jeff Joyce.[7] Plaintiff received a second warning notice on October 5, 2009 for an infraction described as calling in at 5:31 a.m. before his 6:00 a.m. shift to report that plaintiff's brother was in the hospital and plaintiff would not be at work for his shift.[8] Plaintiff's employment was terminated effective October 28, 2009.[9]

Plaintiff amended his EEOC charge on November 2, 2009 to include an allegation of retaliation.[10] Plaintiff was issued a Right to Sue letter on April 13, 2010.[11] Plaintiff filed the instant suit on May 20, 2010, naming as sole defendant the Winn Parish Sheriff's Office. Plaintiff was granted leave to amend his complaint to add Sheriff Little following a motion to dismiss by the Winn Parish Sheriff's Office.[12] The motion to dismiss was, thereafter, granted

[4] R. 45 at pp. 1-2.
[5] Id. at p. 2.
[6] Id. at p. 2.
[7] R. 45-8.
[8] R. 45-9.
[9] R. 45-10.
[10] R. 45-11.
[11] R. 45-13.
[12] R. 6, 7, 8.

and WPSO was dismissed from the suit with prejudice, leaving Sheriff Little as the sole defendant in this matter.[13]

Sheriff Little filed a motion for summary judgment and a motion in limine, both of which are now before the court for consideration.[14] Plaintiff filed a second motion to amend his complaint, seeking to amend his complaint to allege retaliatory discharge with more particularity.[15] Plaintiff's second motion to amend was denied by the magistrate judge. Plaintiff now appeals the magistrate judge's ruling and such appeal is also currently before the court for decision.[16]

## II. Plaintiff's appeal of the magistrate judge's prior ruling

By electronic order dated January 11, 2013, the magistrate judge denied plaintiff's motion for leave to file a second amended complaint in this matter. The brief recitation of reasons for the magistrate judge's electronic order states that

> "[t]he amendment comes too late. The pretrial workup of this case has been completed and trial was set but continued. Allowing the amendment would necessarily require the court to entertain a motion to dismiss on the basis of prescription. However the curt /sic/ notes that the issue of whether the subject matter of the amendment is fairly within the scope of the claims previously pled is a matter for the district judge at or before trial."[17]

The court has reviewed plaintiff's first amended complaint carefully and finds that it fails to include an allegation of retaliatory discharge based upon plaintiff's EEOC charge, alleging,

[13] R. 10.
[14] R. 38, 39.
[15] R. 49.
[16] R. 55.
[17] R. 54.

instead, that plaintiff was subjected to discriminatory employment practices on the basis of his race.[18]

Our review of the record discloses that this case was previously set for trial on March 5, 2012, but the trial was continued twice (once at the request of each side) and eventually reset for September 30, 2013.[19]

The court finds that leave to amend should be granted to plaintiff in this case. Fed. R. Civ. P. 15 instructs that, in cases where amendment is not available as of right, it should be freely granted "when justice so requires." Whether or not to grant leave to amend lies within the discretion of the trial court.[20] Rule 15 evinces a clear bias in favor of amendment and, therefore, a district court must possess a "substantial reason" for denying a request for leave to amend.[21] The court will consider factors such as undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by prior amendment, undue prejudice to the party opposing the amendment and, finally, the futility of the amendment.[22]

The court finds, in this matter, that defendants show no undue prejudice or delay from the allowance of the amendment and, further, that any prejudice to defendants will be cured by the grant of a continuance of the September 30, 2013 trial date. Though we do find in favor of amendment in this instance, we caution plaintiff that future amendment will not likely be granted absent a showing of extraordinary circumstances justifying the same.

Accordingly, plaintiff's appeal of the magistrate judge's ruling will be granted and, accordingly plaintiff will be granted leave to file his second amending complaint in this case. In

---

[18] R. 1, 8 at ¶¶ 4-7, 12.
[19] R. 18, 34, 43, 62.
[20] Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971); Smith v. EMC Corp., 393 F.3d 590 (5th Cir. 2004).
[21] Jones v. Robinson Property Group, L.P., 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted).
[22] Id., citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).

the interest of fairness and in order to cure any potential prejudice this amendment may present to Sheriff Little, the trial of this matter will be continued.

**III. Defendant's motion for summary judgment**

Defendant's motion for summary judgment, filed before the above-referenced second amended complaint, alleges that plaintiff only asserts two causes of action against him: discriminatory employment practices and intentional infliction of emotional distress.[23] Sheriff Little asserts that plaintiff's claims fail as a matter of law because plaintiff is unable to demonstrate a prima facie case of employment discrimination and is similarly unable to demonstrate extreme and outrageous conduct by defendant which would entitle him to damages for the intentional infliction of emotional distress.

Plaintiff's second amended complaint does not materially change the facts alleged in support of plaintiff's claim for disparate treatment based on race. Specifically, plaintiff alleges that African American WPSO employees were being given smaller pay raises or, in some cases, denied pay raises while Caucasian WPSO employees were given larger pay raises.[24] Plaintiff alleges that Sheriff Little denied him a pay raise based on the fact that he is an African American.

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of, inter alia, race.[25] Claims of discrimination under Title VII supported by circumstantial evidence are evaluated under the familiar McDonnell Douglas

---

[23] R. 38-1 at p. 3. The court notes that defendant's motion for summary judgment does not contain numbered pages. Counsel for defendant is reminded that all motions and briefs filed before the court shall contain numbered pages.
[24] R. 1 at ¶¶ 4 – 12.
[25] 42 U.S.C. § 2000e – 2(a)(1).

burden shifting framework.[26] Under the McDonnell Douglas framework, a plaintiff alleging a violation of Title VII must establish a prima facie case of discrimination.[27] If the plaintiff is able to establish a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the facially discriminatory pay disparity. If the defendant successfully meets his burden, the burden again shifts to the plaintiff to show that defendant's proffered reason is merely pretext for prohibited discriminatory conduct.

A plaintiff alleging, as here, that he was the victim of discriminatory pay practices based on race must establish a prima facie case by demonstrating that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility.[28] Defendant's motion asserts that plaintiff is unable to demonstrate that he was paid less than any Caucasian deputy with a comparable set of responsibilities. Specifically, defendant asserts that it was Sheriff Little's plan to give pay raises to deputies who were not, at that time, making $30,000 per year, while withholding pay raises from those already making $30,000 per year in order to close the gap in pay among his employees.[29] To that end, defendant asserts that raises were given based on the pay the employee was then receiving and not on race. Defendant points out that many Caucasian deputies did not receive pay raises and one Caucasian deputy even received a pay decrease. Defendant asserts that, given these facts, plaintiff is unable to establish pay disparity based on race.

Plaintiff argues that WPSO payroll records for the year 2009 support his claim of race-based pay disparity in that they show that Caucasian WPSO employees were given raises even when they made $30,000 or more, while African American employees were not ever given

---

[26] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
[27] Id. at 802.
[28] Pittman v. Hattiesburg Municipal Sep. School Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (internal citations omitted).
[29] R. 38-1 at pp. 3-5.

raises.[30] The court has carefully reviewed the records offered by plaintiff and finds them to be unsupportive of plaintiff's claims.

Record document 45-5 consists of two pages listing WPSO employees and their salaries. Page 2 of that document lists not only the employees, but their job titles. It is important in this matter that we look not only at the pay rates, but at the comparable nature of the jobs held by each employee, since comparison of like jobs is required in the prima facie stage. The court assumes, though it was not argues by either party, that those employees designated as "Road Deputies" share comparable job responsibilities.

Our review of the records indicates no demonstrable disparate pay based on race. For instance, while plaintiff points out that Danny Green and Jeremy Underwood, two full-time Caucasian deputies, both received pay increases and were making more than $30,000, the payroll records indicate that these employees were not classified as "Road Deputies" as plaintiff was, but, instead, bore additional responsibilities of "Investigator" and "Dare Officer."[31] Moreover, we note that Darryl Winder, an African American Investigator made $41,600, while Jeremy Underwood, a Caucasian Investigator, made only $30,000.[32] Additionally, these records show that, only one Road Deputy made more each year than plaintiff: Tommy Chandler. Conversely, many Caucasian Road Deputies made less. Some Road Deputies made only $22,000 as compared with plaintiff's salary of $29,900.[33] It would appear to the court that seniority may be a factor in pay advancement and, also, that the raises at issue could not accomplish the goal of boosting all Road Deputies' pay to $30,000, since many made far less than $30,000 according to the payroll records.

---

[30] R. 48 at pp. 7-8; R. 45-5 (WPSO payroll records attached as "Exhibit 4" to plaintiff's memorandum in opposition to defendant's motion for summary judgment).
[31] R. 45-5 at p. 2.
[32] Id.
[33] Id.

It is the burden of a plaintiff faced with a motion for summary judgment, to come forward with evidence and argument in support of the vital elements of his claims.[34] In this case, the payroll evidence simply does not meet that burden. In articulating a prima facie case, a plaintiff seeking to support a claim for discriminatory pay practices must address relevant comparative factors among those employees designated "Road Deputy." Without such evidence, the payroll numbers simply do not establish race discrimination.

Given these facts, the court finds that plaintiff has failed to articulate the requisite prima facie case for race-based pay discrimination in this case. Defendant's motion for summary judgment will be granted as to this claim.

Defendant's motion also seeks dismissal of plaintiff's claim for intentional infliction of emotional distress (hereinafter "IIED") on the grounds that plaintiff does not allege conduct rising to the level of that for which such damages are available under Louisiana law.

Our review of plaintiff's complaint, as now amended for the second time, reveals an absence of any factual allegations articulating a claim of IIED. Plaintiff's second amended complaint instructs that it deletes Paragraphs 15 – 18, which were the paragraphs supporting plaintiff's IIED claim in his original and first amended complaint.[35] The paragraphs which, at plaintiff's instruction, replace former Paragraphs 15 – 18 do not refer to plaintiff's IIED claim. It appears to the court that these new paragraphs, instead, are offered in support of plaintiff's claim for retaliatory discharge.[36] For this reason, the court finds that the claim has been effectively abandoned and, accordingly, defendants' motion should be granted. We note, however, that,

---

[34] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Matsushida Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[35] R. 1, 8.

[36] R. 1, 8, 49-3.

even if the court were to assume that plaintiff's claim for IIED somehow survived deletion, we would still grant defendant's motion for summary judgment.

Louisiana law, applicable to IIED claims under Title VII, requires that a plaintiff seeking damages for IIED show that (1) the conduct of the defendant was extreme and outrageous that it is the sort of conduct which is utterly intolerable in a civilized community; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.[37] Conduct which is otherwise illegal may not rise to the level of outrageous conduct for which IIED damages are intended.[38]

The court has examined relevant case law and finds that Fifth Circuit and Louisiana jurisprudence interpreting these elements do not support a claim for IIED in this case. In every case that this court reviewed, the courts considering the issue required conduct rising to a level which is certainly not present in plaintiff's allegations.[39] Moreover, plaintiff cites no authority in which IIED damages were awarded to a plaintiff on the basis of conduct similar to that alleged in this case. Given these findings, were the court to find that plaintiff's complaint contained a properly asserted claim for IIED, we would still find summary judgment appropriate as to such claim. Defendant's motion will be granted with respect to any IIED by plaintiff.

---

[37] Fletcher v. Wendelta, Inc., 999 So.2d 1223, 1230 (La. App. 2 Cir. 2009) citing Nicholas v. Allstate Ins. Co., 765 SO.2d 1017 (La. 2000).

[38] Goldberg v. Moses, 811 So.2d 1165, 1167 (La. App. 4 Cir. 2002) citing Marques v. Fitzgerald, 99 F.3d 1 (La. App. 1 Cir. 1996).

[39] McCoy v. City of Shreveport, 492 F.3d 551 (5th Cir. 2007); Noto v. Regions Bank, 84 Fed. Appx. 399 (5th Cir. 2003); White v. Monsanto, 585 So.2d 1205 (La. 1991); Smith v. Ouchita Parish Sch. Bd., 702 So.2d 727 (La. App. 2 Cir. 1997). The court notes that our findings with respect to plaintiff's IIED claim apply not only to plaintiff's purported IIED claim regarding race-based pay discrimination, but also to plaintiff's newly added retaliatory discharge claim.

## IV. Defendant's motion in limine

Also before the court is Sheriff Little's motion in limine seeking to exclude evidence of his criminal conviction at the trial of this matter.[40] The motion asserts that, while such evidence is generally admissible under Fed. R. Evid. 609, evidence of Sheriff Little's felong drug trafficking conviction would, in this case, be so prejudicial as to outweigh any probative value.

The court has reviewed defendant's motion, as well as plaintiff's opposition thereto and finds that the motion must be denied. Fed. R. Evid. 609(a)(2) specifically provides that

> for any crime, regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement.

The court need not delve deeply into the particulars of Sheriff Little's felony conviction for drug trafficking to determine that such a crime, when committed by a Sheriff, charged with upholding the law, necessarily involves dishonest acts and/or false statements. We agree with the argument by plaintiff that, although prior convictions falling under FRE 609(a)(2) usually involve crimes in which dishonest acts or false statements are an essential element, some crimes, such as those for which defendant was convicted, involve dishonest acts or false statements because of the unique facts of the criminal case presented to the fact finder.[41] Again, given the particular facts of Sheriff Little's prior conviction, we deem this conviction one falling under the mandatory admissibility provision of FRE 609(a)(2). Defendant's motion in limine will be denied and evidence of his prior conviction will be admissible for impeachment purposes at the trial of this matter.

The court will issue a judgment and order in conformity with these findings.

---

[40] R. 39.

[41] U.S. v. Jefferson, 623 F.3d 227, 234 (5th Cir. 2010) citing U.S. v. Williams, 642 F.2d 136, 140 (1981).

Alexandria, Louisiana
June 6, 2013

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE